In the Matter of the arbitration between
**FARKAR COMPANY, Petitioner,**

and

**R. A. HANSON DISC., LTD., and R. A. Hanson Co., Inc., Respondents.**

No. 76 Civ. 4669.

United States District Court,
S. D. New York.

Dec. 9, 1977.

Cadwalader, Wickersham & Taft, New York City (Terence F. Gilheany, Alan W. Granwell, Michael G. Dolan, Benjamin B. Sendor, New York City, of counsel), for petitioner.

Baker & McKenzie, New York City (Lawrence W. Newman, New York City, of counsel), Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll, Spokane, Wash. (Patrick A. Sullivan, Lynden O. Rasmussen, Spokane, Wash., of counsel), for respondents.

LASKER, District Judge.

This is a motion to compel arbitration of a contract dispute between the Farkar Company ("Farkar") and two R. A. Hanson organizations, R. A. Hanson Co., Inc. ("Hanson, Inc.") and its international sales subsidiary, R. A. Hanson, DISC., Ltd. ("Hanson, DISC").

The relevant facts are not in dispute. In July, 1974, Farkar, an Iranian corporation (¶ 3, Petition to Compel Arbitration) was awarded a canal construction contract by the Khuzestan Water and Power Authority of Iran. Prior to the award, Farkar's chief officers, Pakrad Kazazian ("Kazazian") and Nicolas Markarian ("Markarian") had been shopping for equipment that would be needed for the excavation work required

under the contract. In the course of their activities they met Robert Waggoner and Goorgen Assatourian, (Markarian Deposition, 43–45, 78, 81–83; Kazazian Deposition, 37–38) sales representatives for "RAHCO" machinery, which included excavation equipment of the kind needed for canal work. ("RAHCO" is a tradename used both by Hanson, Inc. and Hanson, DISC. Hanson Deposition at 68. It is also used to identify the excavating equipment in which Farkar was interested. See, Exhibits A, N–1) Following a meeting between Farkar's officers and RAHCO's salespeople, Farkar entered into negotiations for the purchase of a RAHCO DE–30 excavator. On September 21st, Farkar signed an agreement to purchase a RAHCO DE–30 excavator. The agreement was thereafter executed by Hanson, DISC, but not by Hanson, Inc., in Spokane on November 11, 1974. Subsequently, the excavator was manufactured and delivered—all this occurred in Spokane.

Ultimately, after the machine had made its way to Iran, Farkar was dissatisfied with its performance. Allegedly: it took much longer to assemble than had been represented, it could not perform the specialized tasks for which it had been purchased, and it broke down repeatedly. As a result, Farkar exercised its contractual right to commence an arbitration proceeding by filing, on October 6, 1976, a demand for arbitration, in which Farkar alleged breaches of various warranties (see, ¶ 13, Purchase Agreement; Demand for Arbitration at 4–5). The prayer for relief sought both actual and consequential damages. The respondent Hanson organizations did not submit to the demand for arbitration.

Instead, on October 19, 1976, they obtained a stay of proceedings from the Superior Court, Spokane County, Washington. One day later, Farkar filed, with this court, a petition to compel arbitration. Thereafter, the respondents moved to dismiss the petition on the grounds that the claim for consequential damages was not arbitrable and that venue in this district was improper.[1] The motion also requested an order declaring that Hanson, Inc., which did not sign the contract under which the arbitration proceedings were commenced, was not subject to the jurisdiction of the arbitrators. At a hearing on the motion to dismiss, the court ordered discovery on the question of Hanson, Inc.'s relation to Hanson, DISC, so as to determine whether Hanson, Inc. was bound by the arbitration clause although it was not a signatory to the purchase or arbitration agreement. Discovery is now complete. For the reasons stated below, the motion is denied.

## I.

Respondents contend that Farkar's demand for consequential damages is not arbitrable because the purchase agreement, which contained the arbitration clause, provided that "[i]n no event shall RAHCO be liable for special or consequential damages."[2] Although the quoted clause may seriously undermine the merits of Farkar's claim, it does not remove the claim from the subject matter jurisdiction of the arbitrators.

 In pertinent part, the arbitration clause reads:

arising out of, connected with, or resulting from any order hereunder, or from the performance or breach thereof, or from the manufacture, sale, delivery, resale, repair or use of any truck, accessory or part covered by or provided under any order hereunder shall in no case exceed the price allocable to the machine or part thereof, accessory or part which gives rise to the claim. In no event shall RAHCO be liable for special or consequential damages."

---

1. Because the arbitration clause provided that arbitration proceedings be conducted in New York, there is no question that venue lies in this district. *Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba, S. A.*, 243 F.2d 342, 346 (2d Cir. 1957); *Lawn v. Franklin*, 328 F.Supp. 791, 793–4 (S.D.N.Y.1971).

2. Paragraph 8 of the Purchase Agreement contained the following limitation of liability clause:

"RAHCO's liability on any claim of any kind, including negligence, for any loss or damages

"[a]ll disputes arising in connection with this Agreement shall be finally decided under the Rules of the American Arbitration Association in New York, New York, United States of America, by one or more arbitrators appointed in accordance with those Rules. The proceedings shall be conducted in the English language."

The dispute as to the performance of the RAHCO DE–30 excavator plainly arises "in connection with [the purchase] Agreement," and is therefore properly arbitrable under the arbitration clause. Since "an arbitrator is entitled to pass on every question of law or fact necessary to the disposition . ." of the case submitted to him, *Federal Commerce & Navigation Company v. Kanematsu-Gosho, Limited,* 457 F.2d 387, 389 (2d Cir. 1972), and since the matter and amount of damages must be resolved as part of the disposition of the dispute, it is within the arbitrator's power to entertain a claim for consequential damages. The power is not reduced by the limitation clause, both because that provision is subject to attack as unconscionable, U.C.C. § 2–302,[3] and because the "duty to arbitrate is not diminished by the fact that the claim of one of the parties may be lacking in merit." *Bigge Crane and Rigging Co. v. Docutel Corporation,* 371 F.Supp. 240, 244 (E.D.N.Y.1973). Arguably, a specific prohibition against claiming consequential damages does more than merely detract from the merit of such a claim. However, it does not go so far as utterly to remove the issue from the arbitrator's jurisdiction.

▪ The request that the court direct the arbitrators to make specific findings concerning the limitation of damage clause is denied. Of course, there is a strong public interest in having contract disputes correctly decided, and to that end, detailed rulings would be useful. But, as was observed in *Sobel v. Hertz, Warner & Co.,* (reversing a district judge's order remanding the case to the arbitrators for the purpose of having them specify their findings) 469 F.2d 1211, 1215 (2d Cir. 1972):

"[T]here is also a public interest, manifested in the United States Arbitration Act, 9 U.S.C. § 1 et seq., in the proper functioning of the arbitral process. It would be destructive of that process if [the court] approved the . . . requirement . . . that the arbitrators give reasons for their decision. Arbitration may not always be the speedy and economical remedy its admirers claim it is—this case is proof enough of that. But forcing arbitrators to explain their award even when grounds for it can be gleaned from the record will unjustifiably diminish whatever efficiency the process now achieves." (footnote omitted)

II.

Hanson, Inc. is a manufacturer of specialized construction equipment. Hanson, DISC is a subsidiary, which was formed in 1971 to take advantage of favorable tax treatment available for exports of machinery manufactured by Hanson, Inc. As appears more fully, below, Hanson, DISC exists solely for that purpose (see, Articles of Incorporation; Election for Treatment as a Domestic International Sales Corporation (DISC); Domestic International Sales Corporation Agreement of December 27, 1972 —all contained in Exhibit B).

Understandably emphasizing that it was Hanson, DISC—not Hanson, Inc.—which signed the purchase agreement, respondent Hanson, Inc. claims that it is not bound by the contract or its arbitration clause. Accordingly, it contends that it is not a proper party to the arbitration proceeding. The argument is unpersuasive.

▪ It is well established that arbitration agreements may bind others than the original signatories:

"Ordinary contract principles determine who is bound by such written provisions and of course parties can become contractually bound absent their signatures . . the variety of ways in which a party may become bound by a written arbitration

---

**3.** In a similar vein, the clause might be ignored if the limited remedy that it provided were found to "fail of its essential purpose." U.C.C. § 2–719.

provision is limited only by generally operative principles of contract law." (footnotes omitted) *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960). *Interocean Shipping Company v. National Shipping and Trading Corporation*, 523 F.2d 527, 539 (2d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *Wells Fargo Bank v. London Steam-Ship Owners' Mutual Insurance Association, Ltd.*, 408 F.Supp. 626, 629 (S.D.N.Y.1976). "In an appropriate situation, the corporate veil may be pierced and a party may be held bound as the signatory's alter ego." *Interocean Shipping Company v. National Shipping and Trading Corporation, supra*, 523 F.2d at 539, following *Fisser v. International Bank, supra*, 282 F.2d at 235.

■ Locating the source of the "ordinary contract principles" presents a threshold choice of law question. Respondents contend (Supporting Memorandum at 24) "that *federal* common law" applies (emphasis in original). However, they have not pointed to any—and we know of no such—federal law of contracts. For general principles of contract law, federal courts rely on state law. See, e. g., *Fisser v. International Bank, supra*, 282 F.2d at 233 n.6 and cases cited therein, especially, *Application of Reconstruction Finance Corp.*, 106 F.Supp. 358, 360 n.2 (S.D.N.Y.1952); see, also, *Wells Fargo Bank v. London Steam-Ship Owners' Mutual Insurance Association, Ltd., supra*, 408 F.Supp. at 629–30. As for the question which state's law applies, there is no true conflict in this case, since neither side has even suggested an interested forum other than Washington. In any event, under any one of the current choice of law analyses that is used in a contract case—lex locus, grouping of contacts, governmental interest—it is clear that the law of the State of Washington should be applied. Respondents are Washington corporations, the contract was finally approved in Washington, and both manufacture and delivery occurred there. Furthermore, because the question here is the conditions under which the separate corporate identities are to be disregarded, the policies of Washington, which created the corporations and is the place where they do business (¶ 3, Hanson Moving Affidavit; Hanson Deposition at 5, 33), would be furthered by application of Washington law.

■ Under Washington law a court will ignore nominal, corporate separation when there is:

"such a commingling of property rights or interests as to render it apparent that [the corporations] are intended to function as one, and, further, to regard them as separate would aid the consummation of a fraud or wrong upon others." *J. I. Case Credit Corporation v. Stark*, 64 Wash.2d 470, 392 P.2d 215, 218 (1964).

Accord, *Nelson v. Brunswick Corporation*, 503 F.2d 376, 381 (9th Cir. 1974); *Burns v. Norwesco Marine, Inc.*, 13 Wash.App. 414, 535 P.2d 860, 863 (1965). It is important to point out that the term "fraud" used in *J. I. Case* is construed in Washington law to mean "nothing more than that violation of duty (denoted as fraud) will result in the entity be not disregarded." C. Horowitz, *Disregarding the Entity of Private Corporations*, 14 Wash.L.Rev. 285, 294 (1939) and 15 Wash.L.Rev. 1, 15, 16 (1940); cited with approval in *J. I. Case Credit Corporation v. Stark, supra*, 64 Wash.2d 470, 392 P.2d at 218; *Burns v. Norwesco Marine, Inc., supra*, 13 Wash.App. 414, 535 P.2d at 863; accord, *Superior Portland Cement v. Pacific Coast Cement Co.*, 33 Wash.2d 169, 205 P.2d 597 (1949); *Associated Oil Co. v. Seiberling Rubber Co.*, 172 Wash. 204, 19 P.2d 940 (1933); *Soderberg Advertising, Inc. v. Kent-Moore Corp.*, 11 Wash.App. 721, 524 P.2d 1355 (1974).

■ In the case at hand, it is clear that Hanson, DISC is the barest shell, an alter ego of Hanson, Inc., whose existence as a barrier to the determination of Hanson, Inc.'s responsibility—whatever it may be— would constitute a "fraud" as that term is distinctively used in Washington law. Hanson, DISC is wholly owned by Hanson, Inc. (Hanson Deposition, at 5–6). Its officers and directors are literally identical to those of the parent (*Id.* at 7–10). It has no employees: the personnel of Hanson, Inc. per-

form all of Hanson, DISC's functions (*Id.* at 12, 13, 47, 48). Hanson, DISC has no inventory (*Id.* at 18) and no office (*Id.* at 19, 20, 59). In sum, the DISC is no more than a "paper" sales subsidiary through which the parent conducts its export business; and even for that purpose it does not employ its own distinct sales force, but rather uses employees of the parent (*Id.* at 17–18). To all but the IRS (which recognizes a distinction between the parent and subsidiary for tax purposes only), Hanson, Inc., and Hanson, DISC are identical (see, e. g., Markarian Deposition at 43–45, 78–83, together with Exhibits M, N–1, N–2; Kazazian Deposition at 37–38).

It is evident, therefore, that Farkar has made at least a prima facie showing that "the identities [of Hanson, Inc. and Hanson, DISC] are so confused and intermingled as to result in probable fraud upon third persons dealing with the corporations or either of them," within the special theory of Washington law. *Associated Oil Co. v. Seiberling Rubber Co., supra,* 172 Wash. 204, 19 P.2d at 941. Such a showing suffices to establish the propriety of ordering Hanson, Inc. to appear before the arbitration board.

We emphasize that we make no finding as to whether Hanson, Inc. is to be held liable if the arbitrators should ultimately determine that Hanson, DISC is liable to Farkar. The ruling above simply authorizes Farkar to put its claims against both corporations before the arbitrators, so that they may decide if one or both is liable for the alleged damages.

The motion is denied.

Submit order on notice.