**In the Matter of the arbitration between FARKAR COMPANY, Petitioner-Appellee,**

**and**

**R. A. HANSON DISC, LTD., and R. A. Hanson Co., Inc., Respondents-Appellants.**

No. 958, Docket 78–7074.

United States Court of Appeals, Second Circuit.

Argued May 5, 1978.

Decided Aug. 16, 1978.

---

Terence F. Gilheany, New York City (Cadwalader, Wickersham & Taft, Alan W. Granwell, Michael G. Dolan, Benjamin Sendor, New York City, of counsel), for petitioner-appellee.

Patrick A. Sullivan, Spokane, Wash. (Winston & Cashatt, L. H. Vance, Jr., Spokane, Wash., and Baker & McKenzie, Charles B. Cummings, New York City, of counsel), for respondents-appellants.

Before MOORE, OAKES and GURFEIN, Circuit Judges.

MOORE, Circuit Judge:

Respondents-appellants, R.A. Hanson DISC, Ltd. (hereinafter DISC) and R.A. Hanson Co., Inc. (hereinafter Hanson Co.) appeal from an order and judgment granting the Petition to Compel Arbitration of petitioner-appellee Farkar Company (Farkar) and ordering that Hanson Co. and DISC proceed to arbitration before the American Arbitration Association (AAA) of all claims asserted by Farkar, including without limitation Farkar's claim for consequential damages, and that all other legal proceedings commenced or to be commenced be permanently enjoined.

This proceeding was commenced in the United States District Court for the Southern District of New York pursuant to § 4 of the United States Arbitration Act, 9 U.S.C. § 4 (the Act). Jurisdiction is based upon the Act and diversity of citizenship. 28 U.S.C. § 1332. The amount in controversy exceeds $10,000.

Farkar is an Iranian corporation. Hanson Co., incorporated in the State of Washington, manufactures specialized construction equipment—in this case canal excavating machinery. DISC is a wholly-owned subsidiary of Hanson Co., and was incorporated in December, 1971 by Hanson Co. in the State of Washington to qualify as a *D*omestic *I*nternational *S*ales *C*orporation (hence DISC) under the Revenue Act of 1971, an amendment to the Internal Revenue Code of 1954, whereby Hanson Co. receives a tax deferral benefit on sales to foreign customers of Hanson Co.'s products through DISC. Thus, for all practical purposes DISC serves as Hanson Co.'s selling agent for foreign countries. In addition to the tax advantage, Hanson Co. hoped to place on DISC any contractual liability incurred in connection with its sales.

In early 1974, unmindful of the corporate relationship between Hanson Co. and DISC and unversed in the intricacies of American tax law, two representatives of Farkar in Iran discussed the possibility of purchasing canal construction machinery, which would be manufactured by Hanson Co., with purported representatives of Hanson Co. The promotional material provided by Hanson Co. described the machinery in question as the DE–30 manufactured by Hanson Co. and the purchase price as approximately $395,000, "F.O.B. manufacturer's plant". In June 1974 a Farkar representative visited Hanson Co.'s plant in Spokane and negotiated the purchase with a vice-president in charge of sales of both Hanson Co. and DISC. The sales agreement was executed by Farkar in September 1974 and by DISC in November 1974. Thereafter the DE–30 was manufactured by Hanson Co. and delivered.

The background of the sale is of comparatively little importance because the written agreement (the contract) clearly expresses the parties' commitment.

The contract, although signed in the name of DISC (therein referred to as RAHCO, a trade name for Hanson Co.'s products), deals largely with performance obligations of Hanson Co. Thus, by way of illustration, in the contract's paragraph "4. INSPECTION AND TESTING" it refers to "RAHCO's works". Only Hanson Co. (not DISC) had "works". Again under paragraph "9. TECHNICAL CHANGES" the contract provides that "RAHCO reserves the right to discontinue the manufacture . . . or change the design [of its equipment]. . . ." Only Hanson Co. (not DISC) manufactured.

The contract of sale for the "RAHCO DE–30" (here RAHCO was used to describe a Hanson Co. product) was titled

"R.A. Hanson DISC, Ltd.
Subsidiary of R.A. Hanson Co., Inc.
P.O. Box 7400
Spokane, Washington 99207, U.S.A."

On the reverse side were the "STANDARD CONDITIONS OF SALE". Among these conditions were "8. LIMITATION OF LIABILITY", which contained the provision "in no event shall RAHCO be liable for special or consequential damages", and "13. ARBITRATION", which provided:

"a. All disputes arising in connection with this Agreement shall be finally decided under the Rules of the American Arbitration Association in New York, New York, United States of America, by one or more arbitrators appointed in accordance with those Rules. The proceedings shall be conducted in the English language.

b. The courts of the country in which the customer's principal sales and service facilities are located and the courts of the United States and all the States thereof are hereby given jurisdiction to render judgment upon, and to enforce, each such award, and the parties hereto hereby expressly consent to such jurisdiction of such courts.

c. The parties hereto hereby agree that the arbitration procedure provided for herein shall be the sole and exclusive method of resolving any and all of the questions, disputes, claims, and other matters."

Two issues were before the trial court and are now before us. First, DISC signed the sales contract; Hanson Co. did not. Is Hanson Co. bound by its terms on the theory that DISC is merely its *alter ego* or sales agent? Second, have the arbitrators any power to consider and/or award consequential damages in view of the express agreement of the parties as to non-liability there-

for? As a corollary to this issue, is the effect of the provision that all disputes "arising in connection with this Agreement shall be finally decided . . . [by arbitration] . . ." sufficient to nullify the exclusion of consequential damages for arbitrable jurisdiction?

■ The performance of the DE–30 failed to satisfy Farkar which filed a Demand for Arbitration with the AAA against Hanson Co. and DISC, in which it sought not only a recovery of the purchase price but also consequential damages—a total of $2,125,000. The Hanson companies did not submit to this demand and countered by obtaining a stay of proceedings from a state court in Washington. Farkar responded by filing the petition to compel arbitration in the federal court in New York. The Hanson companies moved to dismiss on the ground (1) that under the contract consequential damages were not arbitrable and (2) that Hanson Co., not having signed the contract providing for arbitration, was not subject thereto. This motion brought these issues before the trial court. First, to resolve the issues as to whether Hanson Co., as a non-signatory, was bound by the terms of the contract, the court ordered discovery in order to develop the relationship between Hanson Co. and DISC. After carefully considering the facts adduced thereby, the trial court concluded:

"In sum the DISC is no more than a 'paper' sales subsidiary through which the parent conducts its export business; and even for that purpose it does not employ its own distinct sales force, but rather uses employees of the parent (*Id.* [Hanson Deposition] at 17–18). To all but the IRS [Internal Revenue Service] (which recognizes a distinction between the parent and subsidiary for tax purposes only), Hanson, Inc. and Hanson, DISC are identical . . . ." *Farkar Company v. R. A. Hanson DISC, Ltd.,* 441 F.Supp. 841, 846 (S.D.N.Y.1977) (citations omitted).

A review of the record clearly supports the trial court's conclusion and its direction that

Hanson Co. appear before the arbitration board.[1]

We find it unnecessary to comment except briefly on the parties' extended (possibly overextended) discussion of what is referred to as "federal *contract* common law", "federal common law", "federal general common law", "federal substantive law" and "national [federal] *substantive* law". It is equally needless for us to give heed to other cases in other jurisdiction such as the State of Washington or the State of New York. The issue of fraud or potential fraud, as is generally understood or as "distinctly used in Washington law", in DISC's incorporation and operation plays no part in the resolution of this case. There is no evidence of fraud; DISC was incorporated for the legitimate and limited purpose authorized by Congress.

The reasons for the exclusion of these matters from the ultimate decision as to the liability of Hanson Co. to submit to arbitration should be obvious—under any applicable law the result would be the same. We accept the statement in Farkar's brief that "[e]very case involving a 'piercing of the corporate veil' is *sui generis* and must be evaluated on its own facts". Appellee's Br. at 26. To this we would add that in this case the facts, as found by the trial court, showed that the corporate veil was so diaphanous that it did not even require piercing.

■ However, we disagree with the trial court's conclusion that, despite the parties' agreement that "[I]n no event shall RAH-CO be liable for special or consequential damages", the arbitrators may consider such damages. There is no ambiguity in this specific condition—in fact, it could not be more clearly stated. Without such a provision the seller might well have refused to entertain the sale. This would be even more likely where, as here, the machines were specially manufactured for special tasks. The number of items listed in the arbitration petition as potential consequential damages over and above the purchase

price of the DE–30 attest to the possible chain-reaction that the failure of the DE–30 might set in motion. The seller was entitled at the outset in its contract to avoid, and to protect itself against, this situation.

"[T]he mere assertion that there is a dispute that is arbitrable does not make one exist." *Rosenthal v. Emanuel, Deetjen & Co.,* 516 F.2d 325, 327 (2d Cir. 1975). In that case there was a broad arbitration clause covering any controversy or claim arising out of or relating to the contract or the breach thereof. In spite of the broad arbitration clause we held that a provision that limited partners would not participate in the losses incurred after the date of their withdrawal from the partnership was binding as a matter of law and not subject to arbitration.

■ The arbitration clause, providing that "[a]ll disputes arising in connection with this Agreement shall be finally decided [under AAA Rules in New York] . . .", does not give the arbitrators power to go beyond the terms of the very agreement pursuant to which they serve. As stated by the Supreme Court:

"Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties. . . . 'For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit'." *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962) (citations omitted).

■ In certain situations the determination whether a particular provision is "unconscionable" creates a question of fact properly to be determined by the arbitrators. *See Matter of Granite Worsted Mills,* 25 N.Y.2d 451, 306 N.Y.S.2d 934, 255 N.E.2d 168 (1969); *Allen Knitting Mills v. Dorado Dress Corp.,* 39 App.Div.2d 286, 333 N.Y. S.2d 848 (1972). However, here we find no

---

1. For a detailed description of the facts supporting this conclusion, *see Farkar Company v.* *R. A. Hanson DISC, Ltd.,* 441 F.Supp. 841, 845–46 (S.D.N.Y.1977).

facts to support placing into the "unconscionable" category the provision barring consequential damages. Unconscionability does not enter into this controversy because fair discussions occurred between two commercial parties bargaining at arms length. There was no indication that the parties were of unequal bargaining power, they negotiated such factors as price and delivery, and no evidence was presented showing that the damage limitation clause was a significant departure from industry practice. Thus we conclude that, as a matter of law, the consequential damages provision is not unconscionable and therefore must limit the arbitrator's inquiry. *See Fleischmann Distilling Corp. v. Distillers Co., Ltd.,* 395 F.Supp. 221, 232–33 (S.D.N.Y.1975). To hold otherwise would sanction the right of the courts to redraft the contract and to foist upon the parties an agreement to which they never agreed. And just as the parties had the right to choose arbitration as part of their agreement so did they have the right to circumscribe its scope. Neither courts nor arbitrators have the power to delete such a clearly expressed clause (limitation of liability) from the agreement.

The judgment of the trial court is modified to the extent that arbitration be granted against R.A. Hanson Co., Inc. and R.A. Hanson DISC, Ltd. and that on such arbitration there be excluded from the scope of the arbitration any consideration by the arbitrator or arbitrators of special or consequential damages.

Let judgment be entered accordingly.