INTERNATIONAL PATENT DEVELOPMENT CORPORATION, a Nevada Corporation, Plaintiff,

v.

WYOMONT PARTNERS, a Partnership, and Norman J. Hayes, George Cooke and James Castberg, Defendants.

Civil No. R–80–13 BRT.

United States District Court, D. Nevada.

May 14, 1980.

---

**22.** General Rule 9(b), Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Lionel, Sawyer & Collins, Richard W. Horton, Reno, Nev., for plaintiff.

Fahrenkopf, Mortimer, Sourwine, Mousel & Sloane, Julien G. Sourwine, Reno, Nev., for defendants Wyomont, Hayes and Cooke.

James Castberg, in pro. per.

## ORDER

BRUCE R. THOMPSON, District Judge.

This case is before the Court on the plaintiff's motion for a preliminary injunction and the defendant's motion to transfer the proceedings to the United States District Court for the Northern District of Oklahoma. The plaintiff, International Patent Development Corporation (IPD), is a Nevada corporation doing business in Oklahoma. Named as defendants are Wyomont Partners, a Wyoming partnership, and its individual partners, Norman Hayes, George Cooke and James Castberg, all of whom are Wyoming residents. On March 3, 1977, in the State of Nevada, Wyomont and its partners entered into an agreement with IPD and its president, Lawrence Brown, who is not a party to this litigation. The agreement provides that Wyomont is to receive a percentage of the royalties generated by IPD's development and licensing of certain patents in return for Wyomont's investment of $150,000 in IPD. Wyomont now charges IPD and Brown with breach of this agreement; specifically Wyomont charges that IPD and Brown have licensed patents covered by the agreement to Facet Enterprises, a Delaware corporation doing business in Oklahoma, without remitting to Wyomont its percentage of the royalties received therefor. It is on this charge that the instant litigation centers.

The complaint sets forth three separate claims to relief. The first two are interrelated, seeking a declaration that the arbitration clause contained in the parties' March 3, 1977 agreement [1] is valid and to enjoin Wyomont from proceeding against IPD in any way other than arbitration. The third alleges tortious interference by Wyomont with IPD's relationship with Facet, for which both damages and injunctive relief are sought.

IPD filed this suit in anticipation of Wyomont's filing suit for damages and an accounting against it and its president, Brown. Wyomont had not done so at the time this suit was brought. However, fifteen days after the commencement of this litigation Wyomont filed an action in the United States District Court for the Northern District of Oklahoma, seeking damages and an accounting from IPD, Brown and Facet Enterprises. *Wyomont Partners v. Int'l Patent Development Corp., et al.,* Civ. No. 79–C–724–E (N.D.Okl.). Also pending in the Northern District of Oklahoma is a suit by Facet Enterprises against IPD and Brown, Civ. No. 79–C–613–C, which had already been filed at the time this litigation was commenced.

A motion to transfer an action pursuant to 28 U.S.C. § 1404(a) presents two basic questions: (1) whether the action sought to be transferred "might have been brought" in the proposed transferee district; and (2) whether the transfer would be "[f]or the 'convenience of parties and witnesses, in the interest of justice.'" *Cunningham v. Cunningham,* 477 F.Supp. 632,

---

1. That agreement provides, in pertinent part: "Any dispute between IPD and PARTNERS relating to this Agreement shall be subject to arbitration under the rules and procedures of the American Arbitration Association."

634 (N.D.Ill.1979); *Goldstein v. Rusco Industries, Inc.*, 351 F.Supp. 1314, 1316 (E.D. N.Y.1972). Germane to the former are the legal issues of jurisdiction, venue and the defendants' amenability to service in the proposed transferee forum, e. g., *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); the latter, by contrast, calls for discretion and balancing, taking into account such factors as the plaintiff's right to choose its forum, the convenience of witnesses and parties and avoidance of the delay and expense inherent in duplicative litigation. IPD bases its opposition to Wyomont's motion to transfer principally on Wyomont's inability to demonstrate that the transfer would be for the convenience of witnesses and parties or otherwise in the interest of justice. The more substantial problem posed by the defendants' motion, however, lies in the fact that, at least with respect to IPD's claim that Wyomont should be required to seek arbitration, it appears that venue could not have been laid in the Northern District of Oklahoma at the time this suit was brought.

■ The defendants rely on *A. J. Industries, Inc. v. United States District Court for Central District of California*, 503 F.2d 384 (9th Cir. 1974) as support for their motion to transfer. That case holds that a plaintiff's ability to raise his claims by counterclaim in litigation pending in the transferee forum satisfies the "where it might have been brought" requirement of 28 U.S.C. § 1404(a), even though venue and the defendant's amenability to service in the transferee district could not otherwise be established. The Court expressly limited its holding to situations in which suit was already pending in the transferee forum at the time suit was commenced in the transferor forum. *Id.* at 387. Indeed, a contrary holding would do violence to the Supreme Court's decision in *Hoffman v. Blaski,* supra, which clearly establishes that the determination of transferability must be made *as of the time of filing the action in the transferor district* and that a defendant cannot, by agreement to waive its objections to venue or to its amenability to suit in the transferee forum, prevail on a motion

to transfer to an otherwise unsuitable forum. For a general discussion see 1 Moore's Federal Practice ¶ 0.145[6.–3] at pp. 1649–53. Since Wyomont only brought suit in the Northern District of Oklahoma *after* the instant litigation was commenced, the defendants' reliance on *A. J. Industries* is unavailing.

■ Jurisdiction in this case is based on diversity of citizenship, 28 U.S.C. § 1332. With respect to venue, therefore, the issue of whether this suit "might have been brought" in the Northern District of Oklahoma depends on 28 U.S.C. § 1391(a), which provides as follows:

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

Inasmuch as the individual defendants all reside in Wyoming, venue in the Northern District of Oklahoma could not have been based on the defendants' residence.

Nor could venue have been based on the plaintiff's residence. The record establishes that IPD is a Nevada corporation doing business in Oklahoma. Traditionally, the corporate residence, for venue purposes, has been limited to the state of incorporation. E. g., *Seaboard Rice Milling Co. v. Chicago, R. T. & P. Ry. Co.*, 270 U.S. 363, 46 S.Ct. 247, 70 L.Ed. 633 (1926). With respect to corporate *defendants*, 28 U.S.C. § 1391(c) redefines residence to include not only the state of incorporation but any state in which it does business as well. There is some early case support for the proposition that, in redefining the residence of corporation defendants, subparagraph (c) of 28 U.S.C. § 1391 redefined that of corporate plaintiffs as well. See Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction, § 3811 at p. 60 n. 23. More recent cases reject this position and hold that, for venue purposes, the residence of a corporate *plaintiff* is limited to the state of its incorporation. *Manchester Modes, Inc. v. Schuman*, 426 F.2d 629 (2d Cir. 1970); *American*

*Cyanamid Co. v. Hammond Lead Products, Inc.*, 495 F.2d 1183 (3d Cir. 1974); *Robert E. Lee Co. v. Veatch*, 301 F.2d 434 (4th Cir. 1961), *cert. denied* 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962); *Reuben H. Donnelley Corp. v. F.T.C.*, 580 F.2d 264 (7th Cir. 1978); cf. *Radiation Researchers, Inc. v. Fischer Industries, Inc.*, 70 F.R.D. 561 (D.Okl.1976). For a general discussion see Comment, Federal Venue over Corporations under Section 1391(c): Plaintiff Corporation, the Judicial District Limitation and "Doing Business" 12 Ga.L.Rev. 296 (1978). Because IPD is a Nevada corporation, venue based on plaintiff's residence would thus have been improper in the Northern District of Oklahoma.

 There remains the question of whether IPD's claims "arose" in the Northern District of Oklahoma. Before addressing this issue it should be stressed that in cases presenting more than one cause of action, as opposed to those presenting separate claims for relief based on a single cause of action, see *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), venue must be proper as to each. Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction, § 3808; 1 Moore's Federal Practice ¶ 0.142[3] at p. 1384. It appears that IPD's complaint presents two separate causes of action: the first being based on the arbitration clause contained in the parties' March 3, 1977 agreement and the second on Wyomont's alleged interference with IPD's contractual relationship with Facet Enterprises. Inasmuch as Facet's principal place of business is in Oklahoma, the acts allegedly comprising the basis of the latter cause of action presumably occurred there, too, rendering venue as to that cause of action proper in the Northern District of Oklahoma. From what appears in the record, however, it is difficult to conclude that the former claim, seeking a declaration of validity of the arbitration clause in the parties' March 3, 1977 agreement and an injunction, in effect, against its breach, arises anywhere other than in Nevada. See *Farkar Co. v. R. A. Hanson Disc, Ltd.*, 441 F.Supp. 841 (S.D.N.Y.1977); modified on other grounds, 583 F.2d 68 (2d

Cir. 1978) and on rehearing, 604 F.2d 1 (2d Cir. 1979); cf. *Aaacon Auto Transport, Inc. v. Ninfo*, 490 F.2d 83 (2d Cir. 1974). Accordingly, the defendants' motion to transfer, insofar as it relates to Counts 1 and 2 of the complaint, should be denied.

In the context of suits involving multiple defendants it has been held necessary on occasion to sever and transfer some but not all of the claims against the various defendants to a more convenient forum. *Anrig v. Ringsby United*, 603 F.2d 1319, 1324 (9th Cir. 1978); *Wyndham Associates v. Bintliff*, 398 F.2d 614 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). Authority for this measure is provided in Rule 21, Fed.R.Civ.P. That rule also provides that "[a]ny claim against a party may be severed and proceeded with separately." Although this Court has found no authority directly supporting the severance and transfer of some of the claims against a single party rather than the severance and transfer of multiple claims against multiple parties, there appears to be no bar to such a procedure. Cf. *SEC v. Nat'l Student Marketing Corp.*, 360 F.Supp. 284 (D.D.C.1973). Therefore, the question remains of whether IPD's claim regarding Wyomont's allegedly tortious interference with IPD's relationship with Facet should be separately transferred to the Northern District of Oklahoma.

This Court has already determined that Count 3 of the complaint "might have been brought" in the Northern District of Oklahoma. Furthermore, it appears that transfer of this cause of action would serve both the convenience of parties and witnesses and the interests of justice. Although the plaintiff's choice of forum is entitled to deference, that factor is outweighed by the fact that Facet, from what appears in the record, has no connection whatsoever with Nevada. Furthermore, this claim appears to be seeking to enjoin Wyomont from proceeding against Facet at all in the Northern District of Oklahoma. That contention can best be handled by that Court.

Under the common law, courts in both England and the United States were reluctant to enforce arbitration agreements and held them to be revocable at the will of either party. Widiss, Arbitration: Commercial Disputes, Insurance & Tort Claims 3 (1979). In recent years, legislation has been widely enacted to reverse that rule. Nevada has participated in this trend with its adoption of the Uniform Arbitration Act. N.R.S. 38.015 to N.R.S. 38.205.

N.R.S. 38.045 sets forth the forms of proceedings whereby arbitration agreements may be enforced. That statute provides, in pertinent part:

"1. On application of a party showing an agreement described in NRS 38.035, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

. . . . .

"3. If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subsection 1, the application shall be made therein. Otherwise and subject to NRS 38.195, the application may be made in any court of competent jurisdiction."

N.R.S. 38.055 further provides:

. . . "If the arbitration agreement provides a method of appointment of arbitrators, such method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement."

Surprisingly, IPD neither seeks an order compelling arbitration nor the appointment of an arbitrator pursuant to N.R.S. 38.055. Indeed, in its points and authorities IPD disavows any desire to force arbitration, maintaining that it seeks only a declaration of validity of the parties' arbitration agreement and an injunction restraining Wyomont from its breach.

■ "One moving for a preliminary injunction assumes the burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor." *Wm. Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975) (emphasis and citation omitted). In its present posture, this suit fails to meet either test.

■ IPD has failed to demonstrate either a probability of success on the merits or that serious questions are raised. This conclusion rests not on this Court's appraisal of IPD's ultimate ability to force arbitration were it to properly present that claim. Compare *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) with *Scherk v. Alberto Culver*, 417 U.S. 506, 513–14, 94 S.Ct. 2449, 2454, 41 L.Ed.2d 270 (1974) and *Tullis v. Kohlmeyer & Co.*, 551 F.2d 632, 638 (5th Cir. 1977); compare *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400, 87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270 (1967) and *Hornblower & Weeks-Hemphill Noyes, Inc. v. Csaky*, 427 F.Supp. 814 (S.D. N.Y.1977) with *Atcas v. Credit Clearing Corp. of America*, 197 N.W.2d 448, 292 Minn. 334 (1972). Instead, it follows from the conclusion that this Court is without jurisdiction to fashion the relief requested by IPD. As noted above, arbitration agreements were not enforceable at common law; their enforceability depends, instead, on legislative provision therefor. Despite the clear remedies outlined in N.R.S. 38.045 for the enforcement of arbitration agreements, IPD has expressly eschewed any desire expressly to *compel* arbitration.

"What [IPD] really want[s] here is a judgment declaring that [Wyomont] is bound by the arbitration clause in ad-

vance of arbitration as insurance against the possibility that they may be mistaken in their assertion that it is bound. It does not seem to me that [NRS 38.045 & NRS 38.055] contemplate such a declaratory judgment or authorize the court to render it."

*A/S Ganger Rolf v. Zeeland Transportation, Ltd.*, 191 F.Supp. 359, 363–64 (S.D.N.Y. 1961).

The fact that N.R.S. 38.045 and 38.055 supply IPD with plain and adequate remedies by which to enforce its arbitration agreement also militates in favor of the conclusion that IPD has shown neither the possibility of irreparable injury nor that the balance of hardships tips sharply in its favor. At the time this suit was commenced IPD had the ability to compel Wyomont to submit to arbitration. N.R.S. 38.045(1). In its points and authorities Wyomont asserts that Oklahoma, like Nevada, has adopted the Uniform Arbitration Act. At this juncture, then, it seems that IPD's interest in seeing this dispute arbitrated can be fully protected by way of a motion to stay the Oklahoma proceedings, N.R.S. 38.045(3), or, if that remedy should prove unavailable to it in Oklahoma, by a properly drafted request to compel arbitration pursuant to N.R.S. 38.045(3) and N.R.S. 38.045(1). Under the circumstances, and particularly in light of the deference due the jurisdiction of the United States District Court for the Northern District of Oklahoma over Wyomont's related proceedings, there is no basis on which to justify the award of the extraordinary relief which IPD seeks.

In consideration of the premises,

*IT HEREBY IS ORDERED* that the defendants' motion to transfer be, and it hereby is, denied as to Counts 1 and 2 of the complaint;

*IT FURTHER IS ORDERED* that Count 3 of the complaint be, and it hereby is, severed, and the defendants' motion to transfer this litigation to the Northern District of Oklahoma be granted as to that Count; and

*IT FURTHER IS ORDERED* that the plaintiff's motion for a preliminary injunction be, and it hereby is, denied.