DUN SHIPPING LTD., Plaintiff,

v.

AMERADA HESS SHIPPING CORPO-
RATION, Hovensa, L.L.C. and ABC
Corporation, Defendants.

No. 01CIV2088RMBKNF.

United States District Court,
S.D. New York.

Oct. 28, 2002.

Wayne David Meehan, Esq.—Freehill, Hogan & Mahar LLP., New york, for plaintiff.

James D. Kleiner, Esq.Hill Betts & Nash, New York, for defendant.

## ORDER

BERMAN, District Judge.

### I. Background

On March 12, 2001, Plaintiff Dun Shipping Ltd. ("Plaintiff" or "Dun Shipping") filed a complaint ("Complaint") seeking, among other things, to compel Defendants Hovensa L.L.C ("Hovensa") and Amerada Hess Shipping Corporation ("Hess Shipping") (collectively, "Defendants") to arbitrate Plaintiff's maritime claim for contribution to costs ("General Average Claim") incurred in refloating the vessel M/T Knock Dun ("Knock Dun"). On July 9, 2001, Defendants filed a third-party complaint against M.T. Knock Dun (in rem),

Red Band A.S. and XYZ Corporation for, among other things, breach of the obligations and duties as managers to "insure the proper maintenance, seaworthiness, crewing and/or operation and/or scheduling" of the Knock Dun and for contribution and indemnity "for the entire amount for which [Defendants] may be found liable to plaintiff (liability for the same being expressly denied)." Third–Party Complaint dated July 9, 2001, at 3–4.

On August 10, 2001, Defendants petitioned for an order staying arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and for an order, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that Plaintiff's claim is not arbitrable ("Defendants' Petition").[1] On August 30, 2001, Plaintiff responded with a petition of its own ("Plaintiff's Petition") to compel Defendants to arbitrate. Plaintiff's Petition at 2. Defendants replied on September 6, 2001 ("Defendants' Reply Memorandum").

Not long after the Complaint was filed, on June 7, 2001, Plaintiff sought discovery on the relationship between Hovensa and Hess Shipping, asserting that the relationship had "a direct bearing on whether [the] dispute is subject to arbitration." Plaintiff's Letter to the Court dated June 7, 2001. This discovery matter was referred to Magistrate Judge Kevin N. Fox who, on August 1, 2001, denied Plaintiff's request. See Order dated August 1, 2001 ("2001 Order") (denying plaintiff's request "to obtain, through discovery, information concerning the relationship, if any, between Hovensa LLC and Amerada Hess

Shipping Corporation."). The Court affirmed the Magistrate's 2001 Order on January 8, 2002, however, it did so noting that "the Order precedes both Defendant's Petition to Stay Arbitration and Plaintiff's Motion to Compel Arbitration and, thus, may (need to) be revisited in light of those filings. If upon review of the parties' respective memoranda of law it appears that a hearing or discovery is appropriate, the Magistrate will, the Court is confident, take the appropriate step(s). See Farkar v. R.A. Hanson Disc., Ltd., 441 F.Supp. 841, 843 (S.D.N.Y.1977) (Court ordered discovery after a hearing on motion to dismiss petition to compel arbitration)." Order of the Court dated January 8, 2002.

On August 19, 2002, Magistrate Fox issued a report and recommendation ("Report") recommending that Defendants' Petition be granted and that Plaintiff's Petition be denied. "Dun Shipping was not a principal to the Voyage Charter Party ["Charter Party"] and may not compel arbitration pursuant to its terms," Report at 15, and "there are no factual issues on which discovery should be allowed concerning whether Hovensa had notice about the Voyage Charter Party and its terms." Id. at 18.[2] On September 9, 2002, Plaintiff submitted objections to the Report ("Plaintiff's Objections"). Defendants submitted a response to Plaintiff's Objections on October 2, 2002 ("Defendants' Response").

**For the reasons set forth below, Plaintiff's application for limited discovery as to the arbitrability of its claim**

---

1. ABC Corporation was named as a Defendant in the Complaint but is not identified as one of the parties to Defendants' Petition.

2. Clause 24 of the Charter Party, signed by Knock Tankers and Hess Shipping and dated September 8, 2000, provides that: "Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator, to be appointed by the Owner, one by the Charterer and one by the two so chosen."

(as set forth in Plaintiff's Letter dated June 7, 2001 and Plaintiff's Objections) is granted. Limited discovery is also allowed to Defendants on the issue of whether Dun Shipping was a "party" to the Charter Party. The case is referred to Magistrate Fox for the purpose of scheduling such discovery forthwith and for further analysis and/or hearing on the issue of arbitrability (and report and recommendation) based upon the outcome of that discovery.

## II. Statement of Facts

On or about August 23, 2000, Hovensa, a joint venture owned "by subsidiaries of Amerada Hess Corporation and Petroleos De Venezuela S.A.," contracted to purchase approximately 950,000 barrels of crude oil for shipment from the port of Djena, Congo to its refinery in St. Croix, U.S. Virgin Islands. Defendants' Petition at 2; Affidavit of Thomas J. Bontemps dated September 6, 2001 ("Bontemps Affidavit"). Hovensa asked Hess Shipping, "one of Amerada Hess Corporation's transportation subsidiaries," Defendants' Petition at 2, to arrange for transport of the oil to St. Croix. Report at 2.

On September 8, 2000, Hess Shipping entered into the Charter Party with a company called Knock Tankers Ltd. ("Knock Tankers"), and chartered the ship Knock Dun to transport the oil. Report at 2. On September 30, 2000, the Master of the Knock Dun, "on behalf of Dun Shipping," issued a bill of lading ("Bill of Lading") to Hovensa acknowledging receipt on board of 989,668.8 barrels of crude oil to be "delivered (in the like good order and condition)" to the port at St. Croix. Report at 2; Bontemps Affidavit at 4.[3] On October 13, 2000, during the voyage, the

Knock Dun ran "aground off the island of Antigua." Report at 3.

Plaintiff claims to be the "registered owner of the Knock Dun." *Id.* Plaintiff asserts that "as a consequence of the grounding, it made certain sacrifices and incurred certain expenses 'of a General Average' nature in connection with the refloating of the Knock Dun," and seeks contribution from Defendants for "a proper share of those expenses." *Id.*

## III. Standard of Review

■ "Where a party makes a 'specific written objection' within '[ten] days after being served with a copy of the [magistrate judge's] recommended disposition,' the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin*, 956 F.Supp. 454, 463 (S.D.N.Y.1997) (quoting *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate. *See DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y.1988). Also, determinations as to the arbitrability of a dispute are reviewed de novo. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987) (citing *Lorber Indust. of Cal. v. Los Angeles Printworks Corp.*, 803 F.2d 523 (9th Cir.1986) ("Denial of a motion to compel arbitration is subject to de novo review") and *Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447, 1449 (9th Cir.1986) (order compelling arbitration is subject to de novo review)).

Public policy strongly favors the "resolution of disputes through arbitration rather than litigation." *Chevron USA, Inc. v. Consol. Edison Co. of N.Y.*, 872 F.2d 534,

---

**3.** Thus, Knock Tankers and Hess Shipping are signatories to the Charter Party and Dun Shipping and Hovensa are parties to the Bill of Lading.

537 (2d Cir.1989). "Notwithstanding [this policy], courts must treat agreements to arbitrate like any other contract." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping*, 241 F.3d 135, 146 (2d Cir.2001) (citations omitted). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)

Discovery may be appropriate as to "the question of arbitrability itself." *Int'l Union of Elec., Radio and Mach. Workers, AFL–CIO v. Westinghouse Elec. Corp.*, 48 F.R.D. 298, 300–01 (S.D.N.Y.1969). *See also Farkar Co. v. R.A. Hanson Disc., Ltd.*, 441 F.Supp. 841, 843 (S.D.N.Y.1977) ("court ordered discovery on question of [defendants'] relationship, so as to determine whether [defendant] was bound by the arbitration clause although it was not a signatory to the purchase or arbitration agreement"); *Penn Tanker Co. v. C.H.Z. Rolimpex, Warszawa*, 199 F.Supp. 716, 718 (S.D.N.Y.1961).

## IV. Analysis

The Court has conducted a *de novo* review of the Report, the record, and applicable legal authorities, along with Plaintiff's Objections and Defendants' Response.

### Plaintiff's Alleged Right to Compel Arbitration

Plaintiff's position is that, as the owner of the Knock Dun and as the alleged principal behind Knock Tankers, it is "a party to the subject charter party" and, as such, has the right to enforce the Charter Party's arbitration provisions. Plaintiff's Objections at 15. "The Charter Party never represented that Knock Tankers was the actual owner of the vessel or that Knock Tankers was anything but a manager for the owner." *Id.* at 14. Defendants contend that "Knock Tankers (not Dun Shipping) was the contract party and the owner referred to in the Voyage Charter Party," Defendants' Response at 25, and that Dun Shipping "lacks contractual privity and standing to pursue arbitration thereunder against Hess Shipping." Defendants' Petition at 19.

Magistrate Judge Fox recommended that Plaintiff could not compel arbitration since "the manifestations of Dun Shipping and Knock Tankers were not such as reasonably to indicate to Hess Shipping the existence or identity of Dun Shipping as the owner of the Knock Dun." Report at 15. "At the time of transaction, Dun Shipping was not a principal to the Voyage Charter Party." *Id.* at 14.

The dispute appears to be largely a dispute of fact. ("The test of whether a principal is disclosed is whether the manifestations of the principal or the agent reasonably indicate to the other party ... the identity or existence of the principal." *Getty Oil Co. v. Norse Mgmt. Co.*, 711 F.Supp. 175, 177 (S.D.N.Y.1989) (citing Restatement (Second) of Agency § 4 cmt. d (1958)).[4] There is strong disagreement among the parties as to whether Dun Ship-

---

**4.** "If the manifestations of the principal or agent are such as reasonably to indicate to the other party the identity or existence of the principal, the latter is disclosed or partially disclosed, and this is true although the other party believes that he is dealing with the agent alone. On the other hand, even though the agent purports to be acting on his own account, if the other party knows that he is acting as agent, the principal is not an undisclosed principal but is either a disclosed principal or a partially disclosed principal, depending upon the nature of the other party's knowledge. If the manifestation as to agency is ambiguous, the belief of the other party, if reasonable, is conclusive." Restatement (Second) of Agency § 4 cmt. d (1958).

0

ping and/or Knock Tankers reasonably indicated to Hess Shipping that Dun Shipping was a principal. Plaintiff urges that Knock Tankers specifically identified itself and signed the Charter Party as "Knock Tankers Ltd. as Managers to Owners." Preamble to the Charter Party. "It is a usual and customary practice in the maritime industry for a charter party to be entered into and/or signed by another as an agent of the owner without further identifying the name of the owner." Affidavit of Per–Oscar Lund (not dated) at 3. And, Dun Shipping was apparently the registered owner of the Knock Dun, which was readily "ascertainable through the appropriate shipping index." Plaintiff's Objections at 14.

Defendants, on the other hand, argue that "Knock Tankers was the 'owner' as referred to in the Voyage Charter Party." Defendants' Response at 24. Hess Shipping allegedly "required that its charter parties either be executed by the contracting party or that the contracting party itself, execute the authorization for its agent to execute the charter on its behalf." *Id.* (emphasis omitted). The authorization received by the Charter Party broker stated: "Herewith authorize you to sign above cp on Owners behalf" and came from Knock Tankers, not Dun Shipping. *Id.* at 25. The identity of the owner, according to Defendants, is at best unclear from the parties' communications. *Id.* at 21. Defendants also argue, and Magistrate Judge Fox agreed, that the broker's confirmation recap, dated September 8, 2000, and the Charter Party identified two ships "that might be nominated to carry out the subject voyage," Report at 14, and since "it

was [yet] to be determined which ship would perform," it could not be said that Plaintiff was the principal. Defendants' Response at 24.[5]

Given the contested factual record, it is difficult to conclude, as a matter of law, that Plaintiff was or was not a party to the Charter Party and, as a result, can or cannot enforce the Charter Party arbitration provisions. The Court will allow limited further discovery on this issue by Defendants and requests that the Magistrate revisit this issue by evidentiary hearing (or upon submission) thereafter. *See, e.g., Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (a "complicated set of conflicting facts requires an evidentiary hearing .... it is the very purpose of the trial to establish which party's version of the contested circumstances best comports with reality.").

### Discovery Regarding Hess and Hovensa

Plaintiff contends that, before ruling on the arbitrability of Plaintiff's claim, the Magistrate should have allowed discovery on the issue of Hovensa's "knowledge of and acquiescence to" the terms of the Charter Party. Plaintiff's Objections at 6. Plaintiff is seeking to establish that Hess Shipping was (legally) "sufficiently close" to Hovensa, *id.* at 8, and that because Hess Shipping agreed in the Charter Party to arbitrate, Hovensa should also be bound by that commitment. Plaintiff's Objections at 10 ("it is not unreasonable to inquire further into the relationship between Hess Shipping and Hovensa, at least with respect to this charter party, to determine whether it is appropriate to bind Hovensa to the charter party").[6] De-

---

**5.** The Report cites *Hidrocarburos y Derivados v. Lemos,* where U.S. District Court Judge Charles S. Haight held that "corporate shipowners were only Potential principals until

their vessels were nominated." 453 F.Supp. 160, 172 (S.D.N.Y.1977).

**6.** "There are various methods for binding a charter party non-signatory to that docu-

fendants respond that the Bill of Lading governs here—not the Charter Party—and that the Bill of Lading does not provide for arbitration. *See* Defendants' Petition at 18 ("Plainly, the Bill of Lading constituted the contract of carriage between Dun Shipping and Hovensa. Dun Shipping's General Average Claim lies, if at all, against Hovensa, the owner of the cargo and the Bill of Lading holder."). Consistent with his 2001 Order, Magistrate Fox determined in the Report that "there are no factual issues in which discovery should be allowed concerning whether Hovensa had notice about the Voyage Charter Party and its terms." Report at 18.[7] The Court respectfully disagrees.

Limited discovery may help determine whether or not Hovensa had actual knowledge of and acquiesced in the terms of the Charter Party and, therefore, perhaps should be bound by its arbitration provision. *See State Trading Corp. of In-*

*dia, Ltd. v. Grunstad Shipping Corp. (Belgium) N.V.,* 582 F.Supp. 1523, 1525 (S.D.N.Y.1984) (in cases involving an "owner's or charterer's attempt to enforce an arbitration clause in a charter party against a consignee of the bill of lading . . . specificity is required 'because, as a negotiable instrument, the bill of lading passes into the hands of those who have nothing to do with the charter party, and may not be bound to an agreement of whose terms they have no knowledge or even notice.' ") (citing *Amoco Overseas Co. v. S.T. Avenger,* 387 F.Supp. 589, 593 (S.D.N.Y.1975)).

## V. Conclusion

The Court, for the reasons stated herein, believes that upon this record it cannot be said as a matter of law that Plaintiff is or is not bound by the Charter Party and can or cannot enforce the Charter Party's arbitration provision or whether Hovensa had or did not have actual knowledge or acquiesced in the Charter Party arbitra-

---

ment's arbitration clause. If a charter party's arbitration clause is expressly incorporated into a bill of lading, nonsignatories of the charter party who are linked to that bill through general principles of contract law or agency law may be bound. Additionally, it may be proven that the non-signatory is an alter ego of the corporation which signed the charter party, or that the signatory was acting in an agency capacity for the nonsignatory." *Cont'l U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.,* 658 F.Supp. 809, 813 (S.D.N.Y.1987) (citations omitted). *See also Overseas Oil Transp. Corp. of Panama v. Phibro Energy, A.G.,* No. 88 Civ. 1302, 1990 WL 130773 at *4, 1990 U.S. Dist. LEXIS 11763 at *14 (S.D.N.Y. Sept. 7, 1990)("the non-signatory party may be bound by the agreement as the alter ego of the corporation which signed the charter party"); *Chilean Nitrate Sales Corp. v. The Nortuna,* 128 F.Supp. 938, 940–41 (S.D.N.Y.1955).

**7.** It is uncontroverted that the Bill of Lading did not expressly incorporate the Charter Party or the arbitration provision contained therein. "The Bill of Lading issued by the

Master of the Knock Dun to Hovensa on September 30, 2000, does not state the date of the making of the subject Voyage Charter Party, nor does it name the signatories to that contract." Report at 16; *see* Plaintiff's Objections to August 1, 2001 Order of Magistrate Judge Fox, dated August 15, 2001 at 5 ("The parties do not dispute that the date [of the Charter Party] is left blank in the incorporation clause"). "[C]ourts have found against incorporation where the incorporation clause provides space for listing the name and date of the charter party and the space is left blank." *Assoc. Metals & Minerals Corp. v. M/V Arktis Sky,* No. 90 Civ. 4562, 1991 WL 51087 at *2 (S.D.N.Y. Apr. 3, 1991). *See also Fairmont Shipping Ltd. v. Primary Indus. Co.,* No. 86 Civ. 3668, 1988 WL 7805 at *1, 1988 U.S. Dist. LEXIS 428 at *3 (S.D.N.Y. Jan. 25, 1988); *Midland Tar Distillers, Inc. v. M/T Lotos,* 362 F.Supp. 1311, 1313 (S.D.N.Y.1973) ("The bill of lading will be found to incorporate an arbitration clause contained in the charterparty and will be made subject to it when the bill clearly refers to the charterparty and the holder of the bill has either actual or constructive notice of the incorporation.").

tion provisions. Plaintiff is entitled to limited discovery on the issue of the relationship between Hovensa and Hess Shipping. Similarly, Defendants are entitled to limited discovery on the issue of whether Dun Shipping was a "party" to the Charter Party.

The matter is referred to Magistrate Judge Fox for (i) the purpose of scheduling limited discovery as outlined above and (ii) for revisiting the issue of arbitrability by hearing or upon submission in light of such discovery.