Marie W. **CARROLL**, Appellant,

v.

A. Edwin **SPARKS**, Appellee.

No. 3833.

District of Columbia Court of Appeals.

Argued Feb. 28, 1966.

Decided April 15, 1966.

John J. Donnelly, Washington, D. C., for appellant.

Blaine P. Friedlander, Washington, D. C., with whom Mark P. Friedlander, Mark P. Friedlander, Jr., Washington, D. C., and Harry P. Friedlander, Arlington, Va., were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge:

Appellee, a real-estate broker licensed in the District of Columbia, was engaged by

appellant to sell two houses which she owned on Rhode Island Avenue, N.E. Buyers were procured for both properties, and contracts of sale were executed, but neither transaction reached settlement. Appellee instituted this action against appellant, claiming the commissions which he alleged were due him under the contracts. Appellant filed counterclaims alleging that appellee had breached his fiduciary duties to her, thus causing her damages. Appellee's claim for commissions went to the jury which found for appellant. At the conclusion of all the evidence the trial court, however, directed a verdict against appellant on the counterclaims and she appeals from this judgment.

▆ Appellant claims that appellee induced her to sign a contract which, she alleges, was no contract at all. The basis for this allegation seems to be that the signature on one of the contracts, "B. C. Gogos Inv. Co. by P. Gogos," did not represent any identifiable purchaser. The evidence, however, clearly established that the actual purchaser was Basil C. Gogos who was trading as B. C. Gogos Investment Co. and who authorized his mother, Pandora Gogos, to sign the contract on his behalf. The fact that the purchaser used a trade name in no way made the agreement void or unenforceable. "A contract entered into under an assumed, ficititious, or representative name is generally valid and binding. * * * Individuals may be bound contractually though not named in the contract but merely described by a trade or partnership or association name or otherwise." 17 Am.Jur.2d Contracts § 295, p. 712 (1964); see Members of B. & C. W. Union, etc. v. Hall Baking Co., 320 Mass. 286, 69 N.E.2d 111, 167 A.L.R. 986 (1946); 87 C.J.S. Trade-Marks, Etc. § 178 (1954). And there is no question that an agent may sign a contract for a principal, whether disclosed or undisclosed. As the United States Court of Appeals stated in Lenman v.

Jones, 33 App.D.C. 7, 20–21 (1909), aff'd 222 U.S. 51, 32 S.Ct. 18, 56 L.Ed. 89 (1911):

"* * * It is well settled that an agent may enter into a contract for the purchase of real estate for an undisclosed principal, and that such principal can enforce specific performance of the contract against the vendor. * * * In Pomeroy on Contracts, 2d ed. sec. 89, page 128, it is said: 'When the agreement is executed by an agent in his own name, he appearing to be the contracting party, the requisite as to parties is complied with. * * *'"

▆ So whether or not appellant knew she was contracting with Basil C. Gogos at the time she signed the agreement, a valid contract for the sale of one of her houses existed. Moreover, not only did she not show any breach of duty on the part of appellee with regard to this contract, she also failed to prove any element of damages flowing from the alleged breach. The sale went uncompleted because of a dispute which arose between appellant and the purchaser, not because of an unenforceable contract.

▆ Appellant's second counterclaim alleged that appellee had misrepresented the financing arrangements on the second contract. Although there was a conflict in the testimony about this issue, appellant did not present any evidence of damages which might have resulted from the alleged misrepresentations. Nor was there any significant proof that appellee had acted willfully or maliciously for purposes of punitive damages. The trial court correctly did not allow the issue to go to the jury.

▆ The second contract also provided that appellee would hold certain funds paid by the purchasers in escrow until $1,000 had been accumulated for a down payment. If the purchasers defaulted, the entire amount was subject to forfeiture. Ap-

pellant and the purchasers, however, decided to mutually terminate the contract, and appellant expressly stated that she did not wish to declare a forfeiture of the escrow money. Buyers and seller then jointly requested the surrender of the money from appellee, but he refused to honor this request. The escrow money was turned over to his attorney who, pursuant to a directive from the Real Estate Commission, returned to money to the buyers. As the contract of sale was voided without a forfeiture, appellee was correct in returning the money to the purchasers and appellant cannot claim damages for this action.

We find no error in the trial court's exclusion of certain evidence as irrelevant. Nor did the pretrial judge abuse his discretion in refusing to allow the insertion of an additional item of damages in the counterclaims.

Affirmed.