BROOKS BROS., INC.

v.

**Barry L. HARRIS et al.**

Supreme Judicial Court of Maine.

Argued May 11, 1981.

Decided July 15, 1981.

Michael J. O'Donnell (orally), Bethel, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, Linda A. Monica (orally), Portland, for defendants.

Before McKUSICK, C. J., and WERNICK, NICHOLS, ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

Plaintiff Brooks Brothers, Inc., a fuel oil dealer of Bethel, sued Harris-Cahill, a Massachusetts general partnership, for the balance due on fuel oil and gasoline delivered to the Bethel Inn, a hotel owned by the partnership and located in the same town.[1] The complaint named both partners, Barry Harris and Peter Cahill, as defendants.[2]

---

1. With the requisite court approval, M.R.Civ.P. 4A(c), plaintiff obtained a real estate attachment upon all real estate of the partnership in Oxford County. Section 8(3) of the Uniform Partnership Act authorizes title to real estate to be held and conveyed in the name of a partnership. *See* 31 M.R.S.A. § 288 (1978).

2. Exclusive of geographical references, defendants were named in the caption of the complaint as follows:

    Barry L. Harris
        AND
    Peter J. Cahill
        AS
    HARRIS–CAHILL, a Massachusetts Partnership
        d/b/a
    The Bethel Inn

Plaintiff thus complied with the procedural rule at common law that a partnership may be sued only in the name of all its partners. *See* Wroth, *Civil Rules Amendments*, 20 Me.L.Rev. 49, 53 (1968); J. Crane & A. Bromberg, *Law of Partnership* § 58(a) at 335–36 (1968). Therefore, we need not decide whether the 1967 promulgation of M.R.Civ.P. 4(d)(10) (service upon all partners by service upon any partner or any managing or general agent of the partnership) and the 1973 enactment in Maine of the Uniform Partnership Act, P.L.1973, ch. 377, 31 M.R.S.A. ch. 9 (1978), have effected changes in that procedural rule so that a partnership with a large number of partners may sue or be sued in Maine courts in its common name. In any event, that question is better resolved by the Supreme Judicial Court through its rule-

After a jury-waived trial, the Superior Court (Oxford County) entered judgment for plaintiff against the Harris-Cahill partnership, and against Harris and Cahill as partners therein, in the amount of $7,759.72. The sole issue on appeal is whether the record supports the Superior Court's finding that the Harris-Cahill partnership was the entity that contracted with Brooks Bros. for the oil products. Defendants contend that, contrary to the finding below, the buyer of the oil products was a corporation, Alliance Corporation of Maine, which Harris and Cahill controlled, to which the partnership had allegedly leased the Bethel Inn. Concluding, as we do, that the Superior Court's findings of fact had ample support in the record to withstand a "clearly erroneous" attack under M.R.Civ.P. 52(a), we affirm the judgment.

As we have recently stated, "[t]he essential impact of the 'clearly erroneous' rule is that the trial judge's findings stand unless they clearly cannot be correct because there is *no* competent evidence to support them." *Harmon v. Emerson*, Me., 425 A.2d 978, 982 (1981) (emphasis in original). The record contains abundant competent evidence that Brooks' contractual arrangement was with the owners of Bethel Inn, namely, the Harris-Cahill partnership, and not with Alliance Corporation of Maine. Testimony at trial justifies the following description of the dealings between the parties. Dana Brooks, treasurer of plaintiff Brooks Bros., knew Harris and Cahill had bought the Bethel Inn, although he did not know the exact name or business organization through which they had taken title. At the request of Ernest Tremblay, known to be the manager of the Bethel Inn, with apparent authority to act for the owners, Mr. Brooks submitted a price quotation addressed to "The Bethel Inn, Inc." That was the corporate name of the prior owner of the inn to which plaintiff had sold oil products, and Mr. Brooks thought Harris and

Cahill had merely "bought it out." Subsequently, all bills ran to "Bethel Inn." No one connected with the inn ever attempted to correct Mr. Brooks' erroneous idea of the name of the inn owner.

When the Bethel Inn account fell in arrears, Jeri Brooks, bookkeeper for Brooks Bros., discussed the bill several times with the hotel manager and with Harris, who she knew as "one of the owners." At no time did either ever indicate that the hotel was being leased to Alliance Corporation or that either was acting in any capacity other than for the owners of Bethel Inn. Certain of the oil bills were paid by checks from "Bethel Inn, Manager's Account." Although some others were paid by checks bearing the legend "The Bethel Inn, The Alliance Corporation of Maine," Brooks Bros. never was put on notice that this was anything but a convenient payment device used by the hotel owners. In light of the fact that it is the trial justice's function to assess the credibility and weight of evidence before him, particularly oral testimony, we must accept his specific conclusion that Brooks Bros., Inc. "had no notice, actual or constructive, that they were doing business with the Alliance Corporation rather than the Bethel Inn." The fact that Brooks Bros. addressed its price quotation to a corporation does not support defendants' argument that only a corporation, namely, Alliance Corporation of Maine, is liable for the oil bills. Defendants never did anything to disabuse Brooks Bros. of its obvious assumption in its price quotation and its billings that it was dealing with the hotel owners, and that it was justified in delivering oil products to Bethel Inn, on the credit of that valuable real estate located in the same town. Defendants cannot substitute another corporation as the debtor when it is revealed that in fact the owner of the hotel is not a corporation, but a partnership. *Cf. Clement v. British American Assurance Co.,*

making power by an appropriate amendment comparable to F.R.Civ.P. 17(b) (a partnership "may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States").

141 Mass. 298, 302–04, 5 N.E. 847, 850–51 (1886) (contract of fire insurance on merchandise valid and enforcible despite insurer's mistaken belief that the owner-insured was a sole proprietor, rather than a partnership).

It is a black-letter principle of contract law that "any conduct of one party, from which the other might reasonably draw the inference of a promise, is effective in law as such." 1 *Williston on Contracts* § 22A at 50 (1957); *see also Restatement (Second) of Contracts* § 5 (1973). In the case at bar, the conduct of the Bethel Inn owners was such that Brooks Bros. might reasonably draw the inference of a promise to pay for the oil products delivered at the hotel. By no means was the Superior Court's finding of fact that the partnership that owned Bethel Inn had contracted with Brooks Bros. clearly erroneous on this record.

The entry must be:

Judgment for plaintiff affirmed.

All concurring.

